1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MUHAMMAD S. HAKMAT,                        No.  2:12-cv-1219 DAD

12                     Plaintiff,

13         v.                                   ORDER

14   CAROLYN W. COLVIN, Commissioner
     of Social Security,
15

16                     Defendant.

17

18         This social security action was submitted to the court without oral argument for ruling on

19   plaintiff's motion for summary judgment.  For the reasons explained below, plaintiff's motion is

20   denied, defendant's cross-motion is granted, and the decision of the Commissioner of Social

21   Security ("Commissioner") is affirmed.

22                             PROCEDURAL BACKGROUND

23         On December 15, 2009, plaintiff filed applications for Disability Insurance Benefits

24   ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security

25   Income ("SSI") under Title XVI of the Act alleging disability beginning on April 1, 2000.

26   (Transcript ("Tr.") at 15, 153, 161.)  Plaintiff's applications were denied initially and upon

27   reconsideration.  (Id. at 81, 86, 94-99.)

28   /////

                                          1

Thereafter, plaintiff requested a hearing which was held before an Administrative Law Judge ("ALJ") on July 5, 2011.  (Id. at 42-68.)  Plaintiff was represented by counsel and testified at that hearing.  In a decision issued on August 15, 2011, the ALJ found that plaintiff was not disabled.  (Id. at 35.)

The ALJ entered the following findings:

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2005.
>
> 2.  The claimant has not engaged in substantial gainful activity since April 1, 2000, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3.  While there is a prior Administrative Law Judge (ALJ) determination, dated July 11, 2002, the claimant has demonstrated a material change, such that the *Chavez* burden is satisfied, as of July 12, 2002 through to the present date.
>
> 4.  The claimant has the following severe impairments: degenerative disc disease and depression (20 CFR 404.1520(c) and 416.920(c)).
>
> 5.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 6.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he is limited to standing or walking 6 hours in an 8 hour workday; sitting 6 hours in an 8 hour workday, lifting or carrying 25 lbs[.] frequently and 50 lbs[.] occasionally; and limited to simple routine tasks.
>
> 7.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> 8.  The claimant was born on May 2, 1959 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.  The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).
>
> 9.  The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> 10.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled,"

1    whether or not the claimant has transferable job skills (See SSR 82-
     41 and 20 CFR Part 404, Subpart P, Appendix 2).

2

3    11.  Considering the claimant's age, education, work experience,
     and residual functional capacity, there are jobs that exist in
     significant numbers in the national economy that the claimant can

4    perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

5    12.  The claimant has not been under a disability, as defined in the
     Social Security Act, from April 1, 2000, through the date of this

6    decision (20 CFR 404.1520(g) and 416.920(g)).

7    (Id. at 17-35.)

8         On March 7, 2012, the Appeals Council denied plaintiff's request for review of the ALJ's

9    decision.  (Id. at 1-5.)  Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the

10   complaint in this action on May 7, 2012.[1]

11                                       LEGAL STANDARD

12        "The district court reviews the Commissioner's final decision for substantial evidence,

13   and the Commissioner's decision will be disturbed only if it is not supported by substantial

14   evidence or is based on legal error."  Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012).

15   Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

16   support a conclusion.  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v.

17   Chater, 108 F.3d 978, 980 (9th Cir. 1997).

18        "[A] reviewing court must consider the entire record as a whole and may not affirm

19   simply by isolating a 'specific quantum of supporting evidence.'"  Robbins v. Soc. Sec. Admin.,

20   466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir.

21   1989)).  If, however, "the record considered as a whole can reasonably support either affirming or

22   reversing the Commissioner's decision, we must affirm."  McCartey v. Massanari,  298 F.3d

23   1072, 1075 (9th Cir. 2002).

24        A five-step evaluation process is used to determine whether a claimant is disabled. 20

25   C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  The five-step

26

27   _____
     [1]  The court notes that resolution of this case was delayed by plaintiff's frequent inaction.  On
     three occasions since the filing of the complaint the court was required to issue an order to show

28   cause in response to plaintiff's failure to take various actions as required.

                                              3

process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?   If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

In his pending motion for summary judgment plaintiff argues that the ALJ committed the following seven[2] principal errors in finding him not disabled:  (1) the ALJ improperly found that plaintiff's mental impairments do not satisfy the "paragraph B" or "paragraph C" criteria; (2) the ALJ improperly rejected plaintiff's own testimony concerning his subjective symptoms; (3) plaintiff's medical records from Pakistan do not raise questions about plaintiff's eligibility; (4) the ALJ improperly rejected the statements provided by third parties; (5) the ALJ erred with respect to his treatment of the medical opinion evidence; (6) the ALJ's Residual Functional Capacity

---

[2]  Plaintiff's motion asserts eight claims, however, the court herein addresses plaintiff's claim that the ALJ improperly discredited the third party statement of plaintiff's case worker with plaintiff's claim that the ALJ improperly discredited the third party statements offered by plaintiff's friends and family members as one.  The court has done so since the issue and analysis is the same for both.

1    determination is not supported by the evidence; and (7) the ALJ's finding that there are sufficient

2    jobs in the national economy that plaintiff can perform is not supported by the evidence.[3]  (Pl.'s

3    MSJ (Dkt. No. 17) at 18-23.[4])

4    **I.     Plaintiff's Testimony**

5          Plaintiff argues that the ALJ's finding that plaintiff testimony was less than credible was

6    erroneous.  (Pl.'s MSJ (Dkt. No. 17) at 19.)  The Ninth Circuit has summarized the ALJ's task

7    with respect to assessing a claimant's credibility as follows:

8               To determine whether a claimant's testimony regarding subjective
                pain or symptoms is credible, an ALJ must engage in a two-step
9               analysis.  First, the ALJ must determine whether the claimant has
                presented objective medical evidence of an underlying impairment
10              which could reasonably be expected to produce the pain or other
                symptoms alleged.  The claimant, however, need not show that her
11              impairment could reasonably be expected to cause the severity of
                the symptom she has alleged; she need only show that it could
12              reasonably have caused some degree of the symptom.  Thus, the
                ALJ may not reject subjective symptom testimony . . . simply
13              because there is no showing that the impairment can reasonably
                produce the degree of symptom alleged.
14
                Second, if the claimant meets this first test, and there is no evidence
15              of malingering, the ALJ can reject the claimant's testimony about
                the severity of her symptoms only by offering specific, clear and
16              convincing reasons for doing so . . . .

17   Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks

18   omitted).  "At the same time, the ALJ is not required to believe every allegation of disabling pain,

19   or else disability benefits would be available for the asking . . . ."  Molina v. Astrue, 674 F.3d

20   1104, 1112 (9th Cir. 2012).

21        "The ALJ must specifically identify what testimony is credible and what testimony

22   undermines the claimant's complaints."  Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685,

23   693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.

24   1999)).  In weighing a claimant's credibility, an ALJ may consider, among other things, the

25   "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or

26   _____

     [3]  For purposes of efficiency and clarity the court will address plaintiff's claims out of order.

27

28   [4]  Page number citations such as this one are to the page number reflected on the court's CM/ECF
     system and not to page numbers assigned by the parties.

between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and

testimony from physicians and third parties concerning the nature, severity, and effect of the

symptoms of which [claimant] complains."  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir.

2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.

1997)).  If the ALJ's credibility finding is supported by substantial evidence in the record, the

court "may not engage in second-guessing."  Id.

Here, there was evidence in the record suggesting that plaintiff was malingering.  In this

regard, on March 6, 2010, Dr. Bradley Daigle examined plaintiff and noted that plaintiff "walked

with an unusual stooped gait, wincing and complaining rather histrionically of pain in 'all

joints.'"  (Tr. at 388.)  Moreover, plaintiff's responses to Dr. Daigle's memory test were "strongly

suggestive of malingering," and his answers to Dr. Daigle's fund of knowledge test were "quite

characteristic of naïve malingering."  (Id. at 389.)

Additionally, on March 14, 2010, plaintiff was examined by Dr. Matthew Johnson, who

found plaintiff to be non-cooperative and histrionic.  (Id. at 409.)  Moreover, plaintiff's "Waddell

findings" included "overreaction to pain, nonanatomic pain, regionalization of the pain, and

hypersensitivity to touch."[5]  (Id.)

Where there is affirmative evidence of malingering, the ALJ may discount plaintiff's

testimony without providing specific, clear and convincing reasons.  See Bagoyan Sulakhyan v.

Astrue, 456 Fed. Appx. 679, 682 (9th Cir. 2011)[6] ("When there is affirmative evidence of

malingering, which is present in this case, the ALJ is relieved of the burden of providing specific,

clear, and convincing reasons to discount claimant's testimony.");  Carmickle v. Comm'r, Soc.

[5] "'Waddell's signs' refers to clinical findings that indicate the presence of non-anatomic pain."  Migliore v. Colvin, No. EDCV 12-0251-AJW, 2013 WL 3935879, at *3 (C.D. Cal. July 29, 2013).  "A positive Waddell sign is caused by non-anatomical (functional) factors and implies that the . . . pain has no physical cause.  One or two of these signs may arise from patient anxiety or eagerness to cooperate.  Three or more are usually considered sufficient to make a diagnosis of functional disorder or deliberate deception (malingering) and to rule out physical abnormality."  Primero v. Astrue, No. 12-1820 AJW, 2013 WL 394883, at *4 (C.D. Cal. Jan. 31, 2013).

[6] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1    Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008) (holding that if there exists affirmative

2    evidence of malingering, the general requirement that the ALJ provide clear and convincing

3    reasons for an adverse credibility finding does not apply).  Nonetheless, here the ALJ did provide

4    clear and convincing reasons for discounting plaintiff's testimony.

5            In this regard, the ALJ noted that plaintiff's "primary physical allegation is chronic

6    excruciating pain."  (Tr. at 28.)  However, "while the objective imaging confirms some

7    degeneration in the lumbar spine, the findings do not support the level or degree of pain, as

8    alleged by the claimant."  (Id.)  Moreover, plaintiff was offered lumbar surgery to elevate his pain

9    but refused.  (Id.)  The ALJ noted that there had been "an insufficient offer or proof of

10   musculoskelatel impairments which reasonably would produce such excruciating pain" and that

11   plaintiff had failed to explain why he refused the surgery to treat his pain.  (Id.)

12           The ALJ is permitted to consider such evidence in evaluating a claimant's credibility.  See

13   Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) ("These inconsistencies [lab reports

14   contradicting plaintiff's subjective complaint] constitute significant and substantial reasons to

15   find [claimant's] testimony less than completely credible."); Burch v. Barnhart, 400 F.3d 676,

16   681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for

17   discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.");

18   Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot

19   be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the

20   medical evidence is still a relevant factor in determining the severity of the claimant's pain and its

21   disabling effects.").

22           The ALJ also discounted plaintiff's testimony due to numerous inconsistencies between

23   that testimony and prior statements made by plaintiff.  For example, the ALJ noted that plaintiff

24   admitted to the State Agency that he takes walks every day, could manage his self-care without

25   assistance, could go shopping, drive, do light household chores and watch his children.  (Tr. at

26   29.)  At the administrative hearing, however, plaintiff testified that he needed his wife's

27   assistance to dress and could not perform any household chores.  (Id.)

28   /////

1    Plaintiff also reported to the State Agency that he did not need special reminders to take

2    his medication, visited his relatives during the week and went to his mosque daily.  (Id.)  At the

3    hearing, however, plaintiff testified that he relied on his wife and son to manage his medications,

4    was self-isolating and only went to church once or twice a week.  (Id.)  The ALJ is also permitted

5    to consider such evidence of inconsistencies when evaluating a claimant's credibility.  See

6    Thomas, 278 F.3d at 958-59.

7    Accordingly, for the above reasons, the court finds that the ALJ provided clear and

8    convincing reasons for discounting plaintiff's testimony and, therefore, plaintiff is not entitled to

9    summary judgment in his favor with respect to this claim.

10   **II.       Plaintiff's Medical Records From Pakistan**

11   Plaintiff next argues that the ALJ's comments regarding plaintiff's medical records from

12   Pakistan were "irrelevant and inappropriate."  (Pl.'s MSJ (Dkt. No. 17) at 20.)  In this regard, the

13   ALJ noted that although plaintiff testified to having traveled outside the United States on only a

14   few occasions since his alleged onset date, plaintiff submitted medical evidence from Pakistan

15   bearing dates in 2002, 2003, 2004, 2005, 2006 and 2007.  (Tr. at 29.)  The ALJ commented that

16   in addition to bearing on plaintiff's general lack of credibility, the documents suggested that

17   plaintiff had been outside the United States for "significantly longer periods than he has

18   admitted," which raised a "significant non-medical Title II and Title XVI eligibility factor."  (Id.

19   at 29-30.)  Nonetheless, the ALJ concluded by noting that there had been no attempt by plaintiff

20   to "clarify these numerous inconsistencies" and, therefore, the ALJ found plaintiff to be "less than

21   entirely credible."  (Id. at 30.)

22   Through this statement , it appears the ALJ was merely citing yet another example of

23   plaintiff's inconsistent testimony.  Nonetheless, to the extent the ALJ's comment regarding

24   plaintiff's medical records from Pakistan and their impact on his eligibility for benefits may have

25   been in error, any such error was harmless as it did not substantially impact the ALJ's decision.

26   See Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012) ("The harmless error rule, as codified,

27   requires us to give judgment after an examination of the record without regard to errors or defects

28   which do not affect the substantial rights of the parties.").

8

1    Accordingly, the court finds that plaintiff is not entitled to relief with respect to this claim.

2    **III.    Third Party Statements**

3    Plaintiff also argues that the ALJ should not have afforded minimal weight to the third

4    party statements provided by plaintiff's case manager, wife, friends and family members.  (Pl.'s

5    MSJ (Dkt. No. 17) at 20-21.)  The ALJ considered these third party statements, but afforded them

6    little weight because they were founded on, and similar to, plaintiff's own testimony regarding his

7    subjective complaints.  (Tr. at 30.)

8    As noted above, the court finds that the ALJ provided clear and convincing reasons for

9    rejecting plaintiff's own testimony regarding his subjective complaints.  Accordingly, because the

10   ALJ provided clear and convincing reasons for rejecting plaintiff's own testimony, and because

11   the third party statements offered were consistent with plaintiff's own testimony concerning his

12   subjective symptoms, the court finds that the ALJ also gave clear and convincing reasons for

13   discrediting the third party statements.  See Molina, 674 F.3d at 1114 ("if the ALJ gives germane

14   reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when

15   rejecting similar testimony by a different witness"); Valentine, 574 F.3d at 694 ("In light of our

16   conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own

17   subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it

18   follows that the ALJ also gave germane reasons for rejecting her testimony.").

19   Accordingly, the court finds that plaintiff is not entitled to relief with respect to this claim.

20   **IV.    Medical Opinon Evidence**

21   Plaintiff also argues that the ALJ failed to afford the proper weight to the opinions offered

22   by two of his treating physicians, Dr. Floyd O'Brien and Dr. Moris Sengegor.  (Pl.'s MSJ (Dkt.

23   No. 17) at 21-22.)

24   The weight to be given to medical opinions in Social Security disability cases depends in

25   part on whether the opinions are proffered by treating, examining, or nonexamining health

26   professionals.  Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).  "As a

27   general rule, more weight should be given to the opinion of a treating source than to the opinion

28   of doctors who do not treat the claimant . . . ."  Lester, 81 F.3d at 830.  This is so because a

1  treating doctor is employed to cure and has a greater opportunity to know and observe the patient

2  as an individual.  Smolen, 80 F.3d at 1285; Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir.

3  1990).  The uncontradicted opinion of a treating or examining physician may be rejected only for

4  clear and convincing reasons, while the opinion of a treating or examining physician that is

5  controverted by another doctor may be rejected only for specific and legitimate reasons supported

6  by substantial evidence in the record.  Lester, 81 F.3d at 830-31.  "The opinion of a nonexamining

7  physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion

8  of either an examining physician or a treating physician.  (Id. at 831.)  Finally, greater weight

9  should be given to the "'opinion of a specialist about medical issues related to his or her area of

10  specialty.'"  Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004) (quoting 20 C.F.R. §

11  404.1527(d)(5)).  Although a treating physician's opinion is generally entitled to significant

12  weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician,

13  if that opinion is brief, conclusory, and inadequately supported by clinical findings.'"  Chaudhry

14  v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554

15  F.3d 1219, 1228 (9th Cir. 2009)).

16      Here, the ALJ rejected Dr. O'Brien's January 26, 2002 opinion that plaintiff's pain

17  disorder and major depressive disorder "essentially precluded any ability by the claimant to

18  sustain even simple work."  (Tr. at 30-31) (citation omitted).  The ALJ found that Dr. O'Brien's

19  opinion was based on "medical documentation which [was] not in evidence," that it was

20  "inconsistent with the objective and other credible orthopedic documentation in the claimant's

21  exhibit file," and because it appeared Dr. O'Brien's opinion relied on plaintiff's self-reported

22  complaints.  (Id. at 31.)  In support of this finding, the ALJ noted that Dr. O'Brien's opinion

23  asserted that "herniated discs had been confirmed by MRI, and the claimant's physicians had

24  diagnosed osteoarthritis and rheumatoid arthritis," despite the fact that "[n]o such objective or

25  laboratory evidence" in support of such a conclusion was found in the exhibit file.[7]  (Id. at 31.)

26

27  _____

[7]  It must be noted that Dr. O'Brien was a psychologist, not a medical doctor, who had seen
28  plaintiff for four sessions of psychotherapy at the time he rendered the January 26, 2002 opinion
in question.  (Tr. at 775.)

With respect to Dr. Senegor, the ALJ rejected Dr. Senegor's February 14, 2011 opinion diagnosing plaintiff with severe lumbar radiculopathy.  (Id. at 33.)  The ALJ found that Dr. Senegor's opinion was not supported by a range of motion, tip-toe or heel walking test, that Dr. Senegor's examination revealed that plaintiff's muscle tone was normal, and that Dr. Senegor based his February 14, 2011 opinion on a December 15, 2009 MRI which Dr. Senegor found displayed "severe" stenosis, despite the fact that the MRI report itself reflected a finding of only moderate stenosis.  (Id.)

Here, the court finds that reasons provided by the ALJ for rejecting the opinions of Dr. O'Brien and Dr. Senegor were clear and convincing.  See Turner v. Commissioner of Social Sec., 613 F.3d 1217, 1223 (9th Cir. 2010) (ALJ may reject medical opinion that is "based almost entirely on the claimant's self-reporting"); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (a treating physician's opinion is properly rejected where the treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (finding that the ALJ properly rejected the opinion of a treating physician since it was not supported by treatment notes or objective medical findings); Khounesavatdy v. Astrue, 549 F.Supp.2d 1218, 1229 (E.D. Cal. 2008) ("[I]t is established that it is appropriate for an ALJ to consider the absence of supporting findings, and the inconsistency of conclusions with the physician's own findings, in rejecting a physician's opinion.") (citing Johnson v. Shalala, 60 F.3d 1428, 1432-33 (9th Cir. 1995)); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

Accordingly, the court finds that plaintiff is not entitled to relief with respect to this claim.

**V.      Mental Impairments**

Plaintiff argues that the ALJ's finding that plaintiff's mental impairments did not satisfy the "paragraph B criteria" was not supported by sufficient evidence.  (Pl.'s MSJ (Dkt. No. 17) at 18.)

Where, as here, a mental impairment has been found to be severe at step two, the next step in the evaluation process is to determine if the impairment qualifies as, or is equivalent in severity to, a listed disorder.  In order to meet or equal an affective disorder under Listing 12.04, a

plaintiff's impairment must satisfy (1) both the paragraph A and paragraph B requirements, or (2) the paragraph C requirements detailed in 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04.

To meet the paragraph B requirements a plaintiff must prove that his mental impairments caused at least two of the following:  marked deficiencies in either activities of daily living, maintaining social functioning, or concentration, persistence or pace, or repeated episodes of deterioration or decompensation.  20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04.  A "marked" rating indicates a higher degree of limitation than a "mild" or "moderate" rating.  20 C.F.R. Part 404, Subpart P, Appendix 1, § 1200(c).

Here, the ALJ found that plaintiff's mental impairment did not satisfy the paragraph B criteria.  (Tr. at 25.)  The ALJ found that, although plaintiff's limitation in daily living were "with regard to his complaints of physical pain, rather than mental health symptoms," the ALJ afforded plaintiff the "benefit of the doubt" by finding that plaintiff had "a mild restriction in this domain." (Id. at 24.)  With respect to plaintiff's social functioning, the ALJ found that plaintiff had only moderate difficulties, noting that plaintiff admitted visiting his mosque daily, running errands, caring for his children, "and other social interactions."  (Id.)  With regard to concentration, persistence or pace, the ALJ found that plaintiff had only mild difficulties in this area of functioning, noting that there was "no objective testing (absent malingering by the claimant) to confirm" plaintiff's alleged impairments.  (Id. at 25.)  Finally, the ALJ noted that plaintiff had experienced no episodes of decompensation of an extended duration.  (Id.)

Plaintiff argues that if he did not meet the paragraph B criteria, "he does meet the criteria under paragraph C."  (Pl.'s MSJ (Dkt. No. 17) at 18.)  To meet the paragraph C criteria, a plaintiff must have a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychological support, and one of the following:  (1) repeated episodes of decompensation, each of extended duration; or (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) current history of 1 or more years' inability to function outside a highly

1    supportive living arrangement, with an indication of continued need for such an arrangement.  20

2    C.F.R. Part 404, Subpart P, Appendix 1, § 12.04.

3        Here, the ALJ found that plaintiff's mental impairment did not satisfy the paragraph C

4    requirements.  (Tr. at 25.)  In so concluding, the ALJ found that although plaintiff had alleged to

5    have suffered from mental health impairments for over 16 years, there was "insufficient

6    documentation in treating source records of recurrent symptoms," and "no documentation of

7    repeated episodes of decompensation" or of a "residual disease process" resulting in a "marginal

8    adjustment" that would suggest that an increase in plaintiff's mental demands would "cause the

9    claimant to decompensate," nor was there a history of plaintiff's inability to function outside a

10   highly supportive living arrangement.  (Id.)

11       Although plaintiff disagrees with these findings by the ALJ, in his pending motion

12   plaintiff offers only a brief and conclusory argument, supported merely by reference to plaintiff's

13   testimony, the opinion of Dr. O'Brien and the fact that plaintiff was taking antidepressants.  (Pl.'s

14   MSJ (Dkt. No. 17) at 18-19.)  However, as discussed above, the ALJ properly discredited

15   plaintiff's own testimony and properly rejected Dr. O'Brien's opinion.  Moreover, the mere fact

16   that plaintiff was medicated is insufficient, by itself, to establish that he met either the paragraph

17   B or paragraph C requirements.

18       Accordingly, the court finds that plaintiff is not entitled to relief with respect to this claim.

19   **VI.    Residual Functional Capacity Determination**

20       In a single paragraph, plaintiff asserts that it is "uncertain how" the ALJ determined his

21   residual functional capacity, citing to a handful of points in the record that plaintiff contends

22   supports the conclusion that the ALJ's determination was somehow in error.  (Pl.'s MSJ (Dkt.

23   No. 17) at 22.)

24       Plaintiff's argument, however, is vague and conclusory.  Moreover, it ignores the ALJ's

25   thorough examination of the considerable evidence in the record and fails to point to any single

26   point of error in the ALJ's determination.  With respect to the little evidence cited in support of

27   his argument, plaintiff attempts to rely again on Dr. O'Brien's medical opinion, which the court

28   has already determined the ALJ properly rejected, as well as plaintiff's own hypothetical question

1   posed to the Vocational Expert, which included additional functional limitations beyond those

2   supported by the evidence.  As such, plaintiff's arguments on this point are not persuasive.

3        Accordingly, the court finds that plaintiff is not entitled to relief with respect to this claim.

4   **VII.   <u>Sufficient Number of Jobs</u>**

5        Finally, plaintiff argues that the evidence did not support the ALJ's finding that there were

6   a significant number of jobs available in the economy which plaintiff could perform.  Plaintiff

7   argues that although the ALJ's decision stated that there were 109,000 industrial cleaner jobs,

8   47,000 dishwashing jobs and 24,000 hand packager jobs that plaintiff could perform in

9   California, "[t]he transcript does not reveal that any testimony was elicited [from the Vocation

10  Expert] to this effect" and thus it is "unclear where these numbers came from."  (Pl.'s MSJ (Dkt.

11  No. 17) at 23.)

12       It is clear, however, that "these numbers" came from the Vocational Expert's testimony

13  and can be found at page 65 of the Administrative Record before this court.  (Tr. at 65.)   Once

14  again, plaintiff's argument on this issue is unpersuasive.  Accordingly, the court finds that

15  plaintiff is not entitled to relief with respect to this claim.

16                                CONCLUSION

17       For these reasons, the court finds that plaintiff is not entitled to summary judgment in his

18  favor with respect to any of his arguments.

19       Accordingly, IT IS HEREBY ORDERED that:

20            1.  Plaintiff's motion for summary judgment (Dkt. No. 17) is denied;

21            2.  Defendant's cross-motion for summary judgment (Dkt. No. 18) is granted; and

22            3.  The decision of the Commissioner of Social Security is affirmed.

23  Dated:  June 17, 2014

24

25  _____
    DALE A. DROZD
26  UNITED STATES MAGISTRATE JUDGE

27

28  DAD:6

Ddad1\orders.soc sec\hakmat1219.ord.docx